Mr. Eastman, sir. Yes, Your Honor. We know that you were appointed under the Criminal Justice Act. That's correct, Your Honor. The court wants you to know that we deeply appreciate your willingness to accept the assignment. And I appreciate hearing that, Judge. May it please the court, counsel? My name is Dave Eastman. As the court noted, I am the appellant Pamela Golinveaux's attorney. The issue here is whether or not Iowa's second-degree robbery statute qualifies as a predicate offense under the Armed Career Criminal Act. Would you hold your thought on that for one second? Your opponent last week noted the Walker case. Do you believe under the Walker case we should just remand this case? I wouldn't argue against it, Judge. I certainly would be in favor of that. But do you believe the Walker case requires us to remand? I don't know the answer to that, frankly, off the top of my head. Go back to your argument. Thank you, Judge. You know, in analyzing this particular statute, the place we start, I think, is to determine whether it's a divisible statute, to determine whether we use a categorical approach or the modified categorical approach. This is a divisible statute in that it can be simply a theft. But then there are two second elements, one of which is just doing one of three ways that are set out in the statute to violate the second element. Where it gets confusing, at least to me, is these three ways of violating the second element apply to both of the second elements, one being just something to further the theft, the other being to further an escape. And so consequently, I think the district court took the wrong approach in using the modified categorical approach in looking at other documents to determine what to do in this case. The reason I say that is because once you take a look at these three, you have to take a look at these three ways of violating that second element in order to apply it to both. You're talking about the second element of the robbery. That's correct, Judge. You mean the threatens another, that element? I'm sorry? Why don't you articulate the element and tell me the three elements. The elements that I'm talking about, the elements that you have to do one of those three other things, their description of how you violate the element. Which three things are you talking about? Um, if I can, the three things would be commit assault. Oh, the three enumerated things. Robbery. Yeah. Yes. And so what was the problem with looking at the other documents to see which of those three was alleged here? Because we have to take a look at, there's two parts to, I believe under Shepard, deciding whether or not you use the categorical approach or the modified categorical approach. The first step is, is it divisible? This is divisible. Clearly. The second step is, does one of those divisions lead to a nonviolent crime? That's where you come down to these three, you know, the assault, the threatened somebody, the threatening to commit a forcible felony. And that applies to both second elements. What applies to both? Those three things. In other words, you either have to commit the theft by doing one of these three things, or you have to escape doing one of these three things. But isn't the first part divisible between theft and escape? Yes. All right. So we know this case involved a theft based on the charging document. And then I think the argument would go that we then look to see whether it involved number one, two, or three. In order to apply the second element, yes. Right. That's correct. And so what? And so the charging documents here show that it was an assault, right? That was alleged for the second element. Well, that's where we get into another argument with regard to whether or not the court properly used the other documentation. Under the modified categorical approach, you look and look at the charging documents the court looked at here, the court took out of the PSI. In the court's own footnote to the ruling, the court said that that has called into question as to whether or not that's an appropriate place to look for the charging documents. Because under Shepard, which is based on Apprendi, it's got to be something that the courts have said is reliable because it's either been admitted to by the defendant or because it's been proven to the court. And in this particular case, if we're talking about what the district court did, looked at, in particular, the complaint with regard to the facts. Well, a complaint is a document that is prepared by a police officer. And it is simply an allegation, nothing more. But haven't the Iowa courts considered that in determining whether there's a factual basis for a guilty plea? The complaint? A complaint affidavit. Do you know the answer to that? I don't believe so. The courts will sometimes look at the minutes of testimony. In fact, they'll ask the defendant if it's okay to look at the minutes of testimony. I don't know that that would necessarily include the complaint. But in any event, when we analyze the force part of this, I come down to the point where I'm looking at the Rice case from this court. I think the majority opinion in the Rice case shows that this is not a crime of violence. Now, if I can read just a short little blurb from that case, Rice argues that a person can cause an injury without using physical force, for example, by offering his victim a poisoned drink. The circuit courts that have considered whether a person uses physical force in causing an injury through indirect means such as poisoning have reached differing conclusions. We believe that Castleman, which is a US Supreme Court case, resolves the question before our court. However, because there the court held that even though the act of poisoning a drink does not involve physical force, the act of employing poison knowingly as a device to cause, and here's the important words, physical harm does. In this particular case, the three parts where it describes how to commit the second element may or may not include, well, it does include assault. Because the ultimate harm here is a theft, not physical harm, all of the suggested non-violent things that Judge Kelly put in her dissent in that decision would apply as showing that there are ways to commit this crime without committing a violent act. Because the ultimate result is not violent. With regard to the judge, the district court judge's approach to this, and I want to save some of my time here, but the judge, again, judge looked at the pre-sentence report and gleaned facts out of that. I don't think that was the purpose of Shepard. I think the purpose of Shepard was to determine which of the methods of violating the statute applied when you already determined that one of them is non-violent. And so I don't think we even get to the point of looking at any facts in this case, which, as I said before, I don't believe are supported because they have not been shown to be proven or admitted. And I will yield the rest of my time for a rebuttal. Very well. May it please the court. Counsel, you may proceed. Mr. Tremel. Mark Tremel, United States Attorney's Office, Northern District of Iowa. First of all, Judge Benton, you had referred to the Walker decision which stated that the burden of proof is on the petitioner to prove that the residual clause was used and that you should look to the law at the time of the sentencing. And the question about whether this should be remanded. Looking at the judge's order, the district court did say on page four of the order, the movement must prove that he was sentenced using the residual clause and that the use of that clause made a difference in the sentence and then cited a number of cases for that proposition. But then most of the analysis that occurred after that. All the rest of it. It's fair to say all the rest of it. Go ahead. Well, there were some references to the pre-sentence report. There was a footnote where the judge asked that docket, which is now docket number 16, be put in the record about relevant portions of the state court record that probation relied upon when preparing the pre-sentence report. Basically, the 2255 petition here is one straight little paragraph about Johnson, right? Oh, that's correct. Yeah. It barely takes eight or 10 lines, right? That's right. It's only about Johnson, right? That's right. And the district court here did not follow Walker. Of course, Walker wasn't out yet, but did not comply with Walker in terms of determining whether the claimant here relied on Johnson's new rule. Yeah. The district court spent a lot of time on Mathis and other things. Right. As the parties did in the district court as well. Mathis is not. Is Mathis retroactive? No. It's nosy answer, right? Thank you. But why can't the district court just say we can assume for the sake of analysis that this claim relies on Johnson or that the residual clause was involved and the movement loses anyway because the robbery still counts? Do you think Walker prevents that? I can't understand how. It's not like it's a jurisdictional question whether the movement relies on Johnson or whether the residual clause was involved in the original sentencing. It's not a steel company situation where there's no standing unless we decide the first issue. Isn't it basic appellate litigation 101 that you can always affirm on any ground and assume the predicate element and decide if the person loses on the second element? Your Honor, I haven't spent a lot of time thinking about that as applied to this case. I guess the question would be what if the court mistakenly relied on the residual clause and it wasn't a residual clause case. You could potentially run into situations where could run into situations where an analysis under current law may not move the issue. If under current law the robbery doesn't count, then it's necessary to decide whether the person was sentenced under the residual clause in the first place. I understand that, but if the robbery counts before Mathis and after Mathis, then he's not going to win whether he shows that he was sentenced on the residual clause either way. I understand what you're saying, Your Honor. I haven't thought through all the implications of that to be able to give a definite answer. All right. Yeah, I mean in terms of the remand issue. You have no position on remand issue? Yeah, our view is if the court determines that the record is not good enough to determine the Walker issue, then of course a remand would be appropriate to decide that. I think most of the brief involves the Mathis and the divisibility issues and we do believe as outlined in our brief that the robbery statute is divisible and the assault statute is divisible and 708.1 of sub 1 of the Iowa Code is also divisible and that the court can look at the to determine that. And so what's your best authority on that that we can look at the complaint as a shepherd document? The best authority on that, Your Honor. Well, we would ask the court to look at Jones out of the Sixth Circuit, Gaines, which is in recent a circuit decision, but that was Gaines was where the parties agreed. So the parties agreed in an Iowa case that the complaint and the charging document and another document, which I don't recall, but that was the court didn't directly decide on that. And Shepherd says you can use not only charging documents, but comparable judicial records. A complaint is a comparable judicial record. The question that's been raised in cases like Thornton is if a defendant was charged based on a trial information after a complaint, how can you tell that what he pled to or what she pled to is the same thing charged in the complaint? So even though the complaint is a shepherd document in Thornton, the court says the complaint is not enough because we don't know that you pled to the same thing. Okay, how do we know that here? In this case, so in this case, the complaint shows, first of all, the complaint has a top section if, if, if there's, there's some cases that basically distinguish between the, the complaint part. I mean, did she plead to the complaint here? Was there no trial information? She pled to a trial information. How do we know that she pled to the complaint? Because the complaint talks about the robbery being based on an assault with a, with a tear gas to further an escape. The trial information is consistent with, with less detail. So it talks about an assault, assist or further a theft or escape, but doesn't say anything about tear gas. And then the judgment just says pled to a robbery under 711.3, habitual offender, all consistent with the prior documents, but again, not saying anything about tear gas. So there's no indication in any of these subsequent documents that there was an amendment or anything that was changed from the complaint. But obviously we don't have any record here of the trial information or the judgment specifically saying what the complaint did. And we also don't have any specific record of the defendant saying, I am pleading guilty based on the details in the complaint. So it's not, it's not as strong as, as those cases. Obviously there would have to be an, an inference based on all three of the, of the documents and no record that anything was actually amended. And you think 708.1 sub one is divisible between intending to cause pain or injury and intending to result in physical contact? Yes, Your Honor. The best case on that is Fountain 2008 case. There's several cases that we cited in our brief. Fountain is an eighth circuit case. This is an Iowa case, excuse me. There's two Fountain cases, a 2008 Iowa court of appeals case, and then a 2010 case, which addresses a slightly different issue. The 2008 case is the one that we're citing here. That has a footnote, footnote 12, which, which says those two are separate crimes. And it cross-references Iowa jury instruction 800.1. There's other cases we cite in our brief, like I believe Keaton and Meek and Ostrander that treat the two sub parts of one of subsection one as, as separate. However, you know, they don't, you know, they don't go into a lot of detail on that. Fountain is the one case. And so if we were going to compare this with the Naylor case, where this court looked and said, the parentheses in a jury instruction are not enough. Is there anything in addition to that? Here, we do have this, this, this Fountain case, which is an unpublished opinion. We would also ask the court to look at the Myers case, which this court just decided recently. Where the court looked at the text of the statute, found it was unhelpful because or, the word or alone doesn't determine it. Case law was unhelpful. Here, we, we do have the Fountain case. The jury instructions were ambiguous because, presumably because of the parentheses. Here again, we have parentheses. And then to look at the record, and, and, and the record is a little bit different because in the Myers case, you had a defendant who threatened to kill his girlfriend. And that was in the felony information here. That was, was in the complaint. Going back to this Walker issue, do you think the district court decided that she was sentenced based on the residual clause? No. Do you think the judge just assumed that and for the sake of analysis or what? No, I think, I think what the judge said, was the defendant has the burden to prove that he was sentenced under the residual clause. And then went and did a current day analysis for why this does not, it is not a residual clause case using current law. And there wasn't any specific record where the court said, when I sentenced her, I was not relying on the residual clause. But there is nothing in the record to show that the court was relying on the residual clause. And, and the court actually in this order asked that all the record given to probation office would be put into the record for this court. So in our view, if it is, if it is sent back, we are going to say the defendant hasn't met his, hasn't met his burden to show. And the judge is going to, you know, she would have to go back and look at the same record and say, you know, there, there's no, you know, our argument, I believe is the correct one that there's no evidence this was residual clause at all. So your argument is concluded. Thank you for presenting it. Mr. Eastman, you have a minute or so left for rebuttal. Thank you, Judge. There is also nothing in the record in this case to indicate that the judge did not rely on the residual clause. There is nothing about it one way or the other. The burden of proof is on the appellant in this case or the lower court defendant to show that the residual clause was used. Well, how do you do that when there's nothing in the record to indicate one way or the other? The way you do that is to show that it couldn't have been the other two, which are the other two ways of making a predicate offense. One of those is easy to get rid of. It's the enumerated offenses. Robbery is not one of the enumerated offenses. So then we are left with whether or not this constitutes a violent crime. We're right back to my argument that I took out of Bryce with regard to the end result, whether or not that justifies the actions as being a violent crime. And under assault, there are numerous ways to commit assault that are not violent. And if they aren't violent and the ultimate result isn't violent, the crime is not a violent crime. When you say violent crime, are you referring to the force clause? Yes. Yes. Okay. So I'm asking the court to send this case back with directions as to how to proceed. Thank you. Very well. Thank you for the argument. By way of gratuitous comment, I must say that I indulged in a good deal of self-satisfying schnaudenfreude last week when the Supreme Court was debating within itself. Doesn't help us here, but it makes me feel a little bit better. But anyway. We won't pinch each other. Okay, right. That completes our argument calendar for the morning. And the court will be in recess until 9 o'clock tomorrow morning. Thank you.